IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MATTHEW PUCKETT                                                                          PLAINTIFF

v.                          Civil No. 12-2059

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                           DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Matthew Puckett, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

The Plaintiff filed his applications for DIB and SSI on March 25, 2010, alleging an onset date of December 21, 2009, due to a left tibial plateau fractures and degenerative disk disease of the lumbar spine. Tr. 8, 127-130, 133-139, 162, 176. His applications were denied initially and on reconsideration. Tr. 51-57, 62-65.

An administrative hearing was held on March 10, 2011. Tr. 20-46. Plaintiff was present and represented by counsel. At this time, plaintiff was 40 years of age and possessed a high school education. Tr. 151. He had past relevant work ("PRW") experience as an air manager and mechanic and field service worker for an oil and gas service company. Tr. 152, 178-179.

On March 25, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, Plaintiff's comminuted left tibial plateau fracture, status post open reduction and internal fixation, obesity, and status post remote lumbar diskectomy did not meet or medically equal one of the listed

impairments in 20 C. F. R., Part 404, Subpart P, Appendix 1. Tr. 10. He then determined Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work involving only occasional climbing, balancing, crawling, kneeling, and stooping. Tr. 11- 15. With the assistance of a vocational expert, the ALJ concluded that Plaintiff could perform work as a lampshade assembler, compact assembler, shoe buckler and lacer, charge account clerk, and addressing clerk. Tr. 16.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on January 20, 2012. Tr. 1-4. Subsequently, Plaintiff filed this action. Doc. # 1. This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. Doc. # 10, 12.

The Court has reviewed the entire record in this case, including the transcript of the administrative hearing, Plaintiff's medical records, the ALJ's opinion, and the appeal briefs filed by the parties. The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

**II.  Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's

findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *See Barnhart v. Walton*, 535 U. S. 212, 219-220 (2002).

A. **The Evaluation Process**:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion**:

Of particular concern to the undersigned is the ALJ's RFC assessment in this case. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

Residual functional capacity "is not the ability merely to lift weights occasionally in a doctor's office; it is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc). The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), ©, and (d) of 20 CFR 404.1545 and 416.945. Only after that may the RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.    SSR-96-8P.

In the present case, Plaintiff was injured in a motorcycle accident on December 21, 2009. As a result, he now suffers from the residuals of complicated left tibial plateau fractures and a torn lateral meniscus status post surgical correction. Plaintiff was discharged on December 23, 2009, with crutches and orders to refrain from any weight bearing. Orthopedic surgeon, Dr. Greg Jones, prescribed Diazepam and Norco. Tr. 202. He also explained the high likelihood of post-traumatic arthritis. Tr. 235.

Dr. Jones' physician's assistant, Benton Loggains, examined Plaintiff on December 31, 2009, at which time he had a limited range of motion and edema in his lower extremity. Tr. 233-234. Mr. Loggains instructed him to remain non-weight bearing or, at most, touch-down weight bearing. He was also to use a knee immobilizer any time he was mobile. Tr. 233.

On January 21, 2010, Plaintiff reported significant pain and muscle spasms. Tr. 231-232. He was to prescribed Diazepam and Percocet and advised to avoid anything more than touch-down weight bearing. Tr. 231. At this time, Mr. Loggains indicated that Plaintiff's only restriction was related to the amount of weight he could put on the leg. Tr. 255.

Plaintiff followed up with Dr. Jones on February 10, 2010. Tr. 229-230. He had some knee flexion contracture, and was weight bearing 25 pounds. His x-rays remained unchanged, showing good alignment. Dr. Jones advised him to work on restoring his range of motion and to continue 25-pound weight bearing. He noted that Plaintiff would not be able to return to his previous job as an oilfield laborer and was unsure whether he would have the life skill or training to adapt to a sedentary lifestyle. However, he felt that the severity of the damage to Plaintiff's knee would limit him to sedentary activities. Tr. 229.

On March 8, 2010, Dr. Jones noted much less swelling with a near full range of motion. Tr. 227-228. He allowed Plaintiff to advance to 50% weight bearing but cautioned him to decrease it at once if he had any pain or swelling. Lorcet had made Plaintiff sick, so Dr. Jones prescribed Percocet. Tr. 227.

Plaintiff saw Mr. Loggains on April 21, 2010. Tr. 253-254, 256. He reported using one crutch to walk and indicated that he was walking short distances within his home without any crutches. An examination revealed a slightly limited range of motion and significant atrophy of his quadriceps. X-rays remained unchanged. Mr. Loggains allowed him to gradually increase his activity without the crutch, but stated that he should avoid any activity that caused pain or worsening of other symptoms. A gradual increase in his physical activity was advised. Tr. 253.

On July 8, 2010, Plaintiff reported significant pain in his lower back. Tr. 264-265. Records indicate he had undergone back surgery in 2002. Tr. 264-265. Plaintiff was still walking with a flexed knee and no heel-toe striking. Mr. Loggains explained that this imbalance exacerbated Plaintiff's preexisting back problems. He wanted to obtain an MRI and a full work-up on his back, but Plaintiff could not afford it. Mr. Loggains opined that Plaintiff might eventually have to undergo arthroplasty on his knee if it did not improve. He prescribed Percocet and Valium for pain. Tr. 264.

Without the benefit of an RFC assessment from a doctor who actually examined Plaintiff, the ALJ determined he could perform sedentary work that involved only occasional climbing, balancing, crawling, kneeling, and stooping. *See Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (holding ALJ is required to order medical examinations and tests if medical records presented do not provide sufficient medical evidence to determine whether claimant is disabled); *see also* 20 C.F.R. §§ 404.1519a(b) and 416.919a(b) (2006). In making this determination, the ALJ placed significant weight on Plaintiff's status post surgical x-rays that consistently revealed good alignment and no abnormalities, his opinion that Plaintiff merely appeared for follow-up visits and did not seek out additional medical assistance, his perception of a lack of records documenting pain, and Dr. Jones' and Mr. Loggains' repeated encouragement for Plaintiff to increase weight bearing and to perform exercises. However, as documented above, Plaintiff was consistently prescribed narcotic pain medication and exhibited a limited range of motion in his leg. And, his treatment teams' recommendation that he "exercise" was a part of

6

his treatment plan (physical therapy) and recovery, rather than an indication that he was capable of participating in a rigorous exercise program. Thus, we believe it was highly improper for the ALJ to use Plaintiff's physical therapy exercises against him.

Additionally, the ALJ concluded that Dr. Jones' assessment in March 2010 indicating that Plaintiff had a near full range of motion in his leg was in conflict with Mr. Loggains' April 2010 assessment finding a slightly limited range of motion and significant atrophy of his quadriceps. However, it seems clear to the undesigned that, at both appointments, Plaintiff lacked a full range of motion in his knee, regardless of the exact terminology used. And, it is reasonable to conclude that after a period of disuse, the muscles in the affected limb would atrophy[1], making it more difficult to attain a full range of motion. Accordingly, we can discern no contradiction in the records of Plaintiff's treating sources.

The ALJ also placed undue weight on Mr. Loggains notation in January 2010, approximately one month after Plaintiff's surgery, indicating that Plaintiff's only limitation was the amount of weight he could place on the knee. He failed to take into consideration that the ability to place weight on the knee impacts not only Plaintiff's ability to stand and walk, but also his ability to crawl, kneel, stoop, bend, climb, and balance. And, when coupled with more recent treatment records noting continued range of motion limitations and atrophy, it would be reasonable to conclude that Plaintiff should refrain from these activities. *See* SSR 96-9P, 1996 WL 374185 (A complete inability to stoop would significantly erode the unskilled sedentary occupational base).

---

[1]Atrophy is defined as the wasting or loss of muscle tissue. *See* National Institutes of Health, *Muscle Atrophy*, http://www.nlm.nih.gov/medlineplus/ency/article/003188.htm (Last accessed November 6, 2012). There are two types: disuse atrophy and neurogenic atrophy. True to its name, disuse atrophy is due to a lack of physical activity. *Id.* "Although people can adapt to muscle atrophy, even minor muscle atrophy usually causes some loss of movement of strength." *Id.*

Further, on June 29, 2011, Plaintiff underwent an examination with Dr. Terry Hoyt.[2] Tr. 266-269. He noted a limited range of motion in the knee with atrophy in the left leg and a positive straight leg raise test. Plaintiff had a markedly limited range of motion in his back with chronic tissue changes, restriction of movement in his left extremity, and abnormal neurological findings. Dr. Hoyt diagnosed him with chronic back syndrome, lumbar radiculopathy, and degenerative joint disease of the left knee. Tr. 269. Dr. Hoyt also completed an RFC assessment. He determined that Plaintiff could sit for one hour at a time and up to three hours per day; stand for one hour at a time and up to two hours per day; and, walk for 20 minutes at a time and up to one hour per day. He also felt Plaintiff needed to change positions every 30 minutes, needed to use a cane, and required frequent breaks. Dr. Hoyt indicated that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. He also concluded that Plaintiff could occasionally grasp and finger/fine manipulate with either hand; rarely push/pull, work in extended positions, work above shoulder level, work overhead, reach, bend, balance, and climb stairs and ramps; and, could never squat, crawl, stoop, crouch, kneel, or climb ladders and scaffolds. Tr. 266-268. Because this constitutes the only RFC assessment from an examining source, we believe remand is necessary to allow the ALJ to review this evidence and to render a new assessment of Plaintiff's RFC.

On remand, the ALJ should also obtain an RFC assessment from Dr. Jones/Mr. Loggains, as both are orthopedic specialists and are in the best position to assess Plaintiff's limitations. 20 C.F.R. § 404.1527(c)(2) (Generally, a treating physician's opinion is given more weight than other sources in a disability proceeding.); *see also Brown v. Astrue*, 611 F.3d 941, 953 (8th Cir. 2010) ("Greater weight is generally given to the opinion of a specialist about medical issues in the area of specialty, than to the opinion of a non-specialist.").

---

[2]This evidence was not before the ALJ, but it was submitted to and reviewed by the Appeals Council, as is noted in their decision denying Plaintiff's request for review. Tr. 1-4. Therefore, we must review it in combination with the other evidence of record. *See Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000) (In such cases, we must determine if the record as a whole, including evidence that is new and material, supports the ALJ's determination.).

AO72A
(Rev. 8/82)

**IV.     Conclusion:**

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 6th day of November 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE